GRITT, JUDGE:
An application of the claimant, American National Property & Casualty Company (ANPAC), for an award under the West Virginia Crime Victims Compensation Act, was filed March 29, 2001. The report of the Claim Investigator, *489 filed April 11, 2001, recommended that no award be granted. An Order was issued on May 25, 2001, denying the claim in response to which the claimant's request for hearing was filed June 14, 2001. This matter came on for hearing on September 21, 2001, ex parte, the claimant appearing by counsel, Brian Casto, and the State of West Virginia h aving b een r epresented bye ounsel, J oy M. Bo lling, Assistant A ttomey General.
The claimant, an insurance company, claims to have been the victim of criminal conduct on or about November 27, 1999, in Huntington, Cabell County. This claim arises out of the criminal conduct of Randall Adkins and his wife, Lee Anne Bailey Watson Adkins. The Adkinses were policyholders of an ANPAC automobile policy. The Adkinses had their 1995 Ford Mustang GT, vehicle identification number 47-A-01K935, insured under this policy. On November 27,1999, at approximately 7:00 p.m., the Adkinses purportedly drove their 1995 Ford Mustang to file parking lot of Bank One in Huntington. The Adkinses stated that they wenttoa movieata nearby theater. A t approximately 9:30 p.m.,the Adkinses claimed that they had returned from the movie to their car to find that it had been “stolen by an unknown suspect”. The Huntington Police Department responded to the Adkinses’ 911 call for assistance. The Adkinses then filed a report with the Huntington Police Department and an Affidavit of Theft indicating that their vehicle was stolen. According to the police report, the perpetrator was listed as “unknown”. The Adkinses filed a claim with ANPAC seeking compensation for their loss under the comprehensive coverage provisions of the policy which covered theft loses. As of January 4, 2000, the vehicle had not been recovered nor had any individual been arrested for the alleged theft. ANPAC received an appraisal report for the vehicle which valued it at $14,500.00. ANPAC then paid the lien holder of the vehicle, The City of Huntington Federal Credit Union, in the amount of $10,461.64. ANPAC paid $750.00 to Enterprise Rent A Car and $4,038.18 to the Adkinses personally.
On or about December 5, 2000, Detective Mullins of the Huntington Police Department informed the claimant that the motor and transmission of the Adkinses' vehicle had been recovered. Criminal charges were pursued against the Adkinses. The prosecution asserted that the Adkinses and an accomplice had engaged in fraud by faking the theft of the vehicle, stripping it, selling the parts for cash, and pocketing the insurance money paid by ANPAC.
By Order issued May 25, 2001, this claim was denied on the basis that the claimant, an insurance company, did not meet the definition of “victim” nor did it suffer a “personal injury” as defined under W Va.§14-2A-3(a). Furthermore, the Order stated that a ruling which would in effect indemnify insurance companies would be contrary to the purpose of the crime victim compensation statute. Nothing adduced at the hearing on September 21, 2001, convinces this Court to rule otherwise.
*490 It is clear that ANPAC, although an insurance company and not a “natural person”, may be a “victinT’of a crime under W. Va. Code § 61-llA-4,West Virginia’s Victim Protection Act. In the present claim, it is evident that ANPAC is a victim of insurance fraud and may be entitled to restitution under W. Va § 61-11A-4. However, W. Va. Code §61-11A-4 differs from W. Va. Code §14-2A-3(k) in the definition of who may be a “victim”. W. Va. Code 14-2A-3(k) defines “victim”, in part, as “ a person who suffers personal injury or death” as a result of criminally injurious conduct.
This language is very specific, and the Legislature has made it clear that the Crime Victims Compensation Act was intended to apply only to conduct which causes or poses a substantial threat of injury or death to a “person”, meaning the physical body and/or mind of an individual. The purpose and intent of the Legislature in creating the Crime Victims Compensation Act is set forth under W.Va. Code §14-2A-2, which defines who qualifies as a “claimant” and specifically includes the spouse and dependents of individuals who are victims of criminal conduct. These definitions demonstrate the intent of the Legislature to make awards to natural persons who suffer personal injury or death and to their dependents that suffer emotional trauma and/or economic loss as a result of the death of the primary income earner in the family structure. Insurance companies are not included in any of these definitions. The only section of the statute that mentions insurance deals with the collateral sources which are to be deducted from any award. Since the Legislature specifically lists insurance companies in regard to collateral sources and does not include insurance companies as “claimants,” it is reasonable to infer that had the Legislature intended to include insurance companies as “claimants,” it would have done so. This language, as well as the overall reading of the statute, demonstrates that the intent of the Legislature was to provide compensation to natural persons who suffer injuries to their bodies and/or minds, and to provide limited economic assistance to their dependents when appropriate.
The Court must take notice that the claimant did not and cannot cite any crime victims compensation statute nor any case law interpreting such statutes in the United States which provide any award to insurance companies under any circumstances.
This claim is a companion claim to one filed by TAPCO Underwriters (CV-01-173), which suffered an economic loss due to insurance fraud. The Court makes note of the fact that, although neither party in these claims qualifies as a “claimant” under the Crime Victims Compensation Act, arson as compared to fraud is a risk which an insurance carrier can and does take into account in establishing premiums. Insurance fraud is much more difficult, if not impossible, to predict, to rate, and to take into account in establishing premiums.
The Court is constrained by the law and the evidence to stand by its previous ruling; therefore, this claim must be and the same is hereby denied.